**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JEROME M. HOLMES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. _____ |
| v. | § | |
| | § | |
| SHELLPOINT MORTGAGE SERVICING, | § | With Jury Demand Endorsed |
| LLC, | § | |
| | § | |
| Defendant. | § | |

**COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Jerome M. Holmes ("Plaintiff"), by and through counsel, and for his Complaint against Defendant, Shellpoint Mortgage Servicing, LLC ("Shellpoint" or "Defendant") states as follows:

## I. INTRODUCTION

1.    Plaintiff asserts claims against Defendant for violations of: 1) Texas Finance Code § 392.001 *et. seq.,* known as the Texas Debt Collection Act ("TDCA"); 2) 15 U.S.C. §§ 1692 *et seq.,* known as the Fair Debt Collection Practices Act (the "FDCPA"); 3) the common law tort of invasion of privacy; and 4) the discharge injunction of the United States Bankruptcy Court of the Southern District of Texas, Houston Division, and seeks to recover actual, statutory, and punitive damages; injunctive relief; legal fees and expenses against Defendant.

## II. PARTIES

2.    Plaintiff is a natural person residing in Harris County, Texas and is a "consumer" as defined by the TDCA, Tex. Fin. Code § 392.001(1) and the FDCPA.

1

3.      Defendant Shellpoint is a foreign limited liability company which may be served by delivering citation to its registered agent, Corporation Service Company, 211 E. 7th Street Suite 620, Austin, Texas78701.

4.      Defendant is a "debt collector" or "third-party debt collector" as these terms are defined and contemplated, respectively, under the TDCA, Tex. Fin. Code §§ 392.001(6) and (7).

5.      The debt at issue that Defendant was attempting to collect from Plaintiff was a "consumer debt" as defined by Tex. Fin. Code § 392.001(2) and 15 U.S.C. § 1692a.

6.      Defendant is a furnisher of consumer credit information to national consumer reporting agencies Trans Union, LLC ("TransUnion"), Equifax, Inc. ("Equifax"), and Experian Information Solutions, LLC ("Experian").

## III. JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1334 and 1337(a) and 15 U.S.C. § 1681p and 28 U.S.C. §§2201-2202.

8.      Venue in this district is proper because Defendant transacts business in this district, Plaintiff resides in this district and filed his subject bankruptcy case in this district and the conduct complained of occurred in this district.

## IV. FACTUAL ALLEGATIONS

**A.      The Discharge of the Subject Debt in Plaintiff's Bankruptcy Case**

9.      On September 15, 2015, Plaintiff filed for bankruptcy under Chapter 7 of the U.S. Bankruptcy Code in case number 15-34854 ("Bankruptcy Case") in the Southern District of Texas, Houston Division ("Bankruptcy Court").

10.     Prior to Plaintiff filing his Bankruptcy Case, Ocwen Loan Servicing, LLC ("Ocwen") as prior servicer of the subject debt, asserted a pre-petition claim against Plaintiff in an attempt to collect a consumer debt he allegedly owed requiring him to pay money arising out of transactions in which money, property, insurance, or services were the subject thereof, and the same were primarily for personal, family, or household purposes. In his Bankruptcy Case, Plaintiff listed the subject debt underlying the claims at issue as a secured claim on Schedule "D," secured by a lien on the real property at 1120 Faircrest Dr., Austin, TX 78753 (the "Property") identified as Account No. xxxxxx7373 (the "Loan" or "Account").

11.     In Plaintiff's Chapter 7 Individual Debtor's Statement of Intention filed with bankruptcy petition, Plaintiff noted his surrender of the Property. A true and correct copy of Plaintiff's Statement of Intention is attached hereto as Exhibit "A" and incorporated by reference.

12.     On September 15, 2015, Plaintiff filed a mailing matrix with the Bankruptcy Court that provided Ocwen's correct address.

13.     On September 18, 2015, the Bankruptcy Noticing Center for the Bankruptcy Court sent a copy of the "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines" ("341 Notice") for the Bankruptcy Case by first class mail to Ocwen as servicer and agent of the subject debt. The 341 Notice warned all creditors in conspicuous language against violating the automatic stay pursuant to 11 U.S.C. §362.

14.     On October 28, 2014, Ocwen filed a Notice of Appearance in the Bankruptcy Case.

15.     On December 22, 2015, the Bankruptcy Court issued an order granting Plaintiff a discharge ("Discharge Order") (the said order followed Official Form B18, including the explanatory language contained therein). The order discharged Plaintiff from any liability for the subject pre-petition claim. Included with the Discharge Order was an explanation of the general injunction prohibiting those holding pre-petition claims from attempting to collect those claims. The Discharge Order and its notice warned all creditors in conspicuous language that "**Collection of Discharged Debts Prohibited**" and that "a creditor is not permitted to contact a debtor by mail, phone, or otherwise…or take any other action to collect a discharged debt from the debtor."

16.     On December 22, 2015, the Bankruptcy Noticing Center sent a copy of the Discharge Order to Ocwen, by electronic transmission via its attorney of record. This mailing constituted notice to Ocwen, of the discharge granted in Plaintiff's Bankruptcy Case and the replacement of the automatic stay with the discharge injunction of 11 U.S.C. §524(a).

17.     A true and correct copy of the Discharge Order is attached hereto as Exhibit "B."

18.     At no time during the pendency of the Bankruptcy Case did Ocwen, Defendant, or any other person or entity object to or dispute the details of the subject claim contained in Schedule "D" to Plaintiff's Petition filed in his Bankruptcy Case.

19.     At no time during the pendency of the Bankruptcy Case or thereafter did Plaintiff reaffirm the subject claim or debt with any person or entity.

20.     At no time during the pendency of Plaintiff's Bankruptcy Case was the subject pre-petition claim declared to be non-dischargeable by the Bankruptcy Court.

**B.      Defendant's Attempts to Collect the Subject Discharged Debt from Plaintiff**

21.     Following the December 22, 2015 discharge being granted in Plaintiff's Bankruptcy Case, Defendant engaged in debt collection activity against Plaintiff on the subject discharged debt by: (1) accepting the Account for collection; (2) sending Plaintiff mortgage statements, notices and letters requesting Plaintiff take actions to coerce payment from him of the subject discharged debt; and (3) calling Plaintiff repeatedly.

### 1.     Defendant Accepted the Account for Collection Post-Discharge.

22.     After the discharge was granted in Plaintiff's Bankruptcy Case, Defendant acquired the servicing rights on the Account and began to collect on it. Prior to or when Defendant acquired these servicing rights, it also acquired information about the subject debt and Plaintiff's Bankruptcy Case and discharge of the debt underlying the Account from Ocwen, the owner of the debt and/or independently.

23.     Because Plaintiff never engaged in any business transactions with Defendant at any time or requested credit from Defendant, there was never a debtor creditor relationship between Plaintiff and Defendant.

### 2.     Defendant's Illegal Collection Calls to Plaintiff

24.     After Plaintiff received a discharge in his Bankruptcy Case, which changed the legal status of the Account and closed the Account by operation of law making the subject debt legally uncollectible, Defendant called Plaintiff on one or more occasion regarding the Account in its attempts to collect on the subject discharged debt or to coerce actions from Plaintiff to seek payment thereof.

### 3.     Defendant Sent Plaintiff Collection Statements, Notices and Correspondences on the Account Post-Discharge.

25.    On or about February 16, 2016, Defendant sent Plaintiff a letter stating it was servicing the Loan and because Plaintiff had "not taken steps to resolve the delinquency" that it was instructed by the owner of the mortgage loan to commence foreclosure. The letter also warns Plaintiff that "the owner of the mortgage loan may seek a deficiency judgment against you if the proceeds from the foreclosure sale do not pay off the amount you owe on the mortgage loan." Further, the letter informs Plaintiff about foreclosure options such as loan modification and informs Plaintiff that he may have received a Borrower Solicitation Package and instructs Plaintiff to contact Defendant at the provided address and toll-free phone number to obtain another solicitation package and to complete and send the package to Defendant in order to be considered for alternatives to foreclosure. The letter also includes the FDCPA Mini Miranda warning that the letter is from a debt collector and is an attempt to collect a debt.

26.    A redacted copy of this February 16, 2016 letter Defendant sent to Plaintiff is attached hereto as Exhibit "C."

27.    On or about February 22, 2016, Defendant's loss mitigation department sent Plaintiff a solicitation letter, stating that Defendant had "assigned a new specialist to assist Plaintiff through the remainder of the Loss Mitigation process concerning your mortgage loan." The letter also states the account balance was $96,773.35, but "because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater." The letter also contains information for Plaintiff to contact Defendant and fax it documentation. Additionally, the letter includes the FDCPA Mini Miranda warning that the letter is from a debt collector and is an attempt to collect a debt.

28.     A redacted copy of the February 22, 2016 loss mitigation letter Defendant sent to Plaintiff is attached hereto as Exhibit "D."

29.     On or about April 1, 2016, Defendant sent Plaintiff a letter representing that it had received Plaintiff's request for a loss mitigation program. It also informs Plaintiff that "[t]he evaluation process will begin once we have received all required documentation."  The letter also urges Plaintiff to continue making his monthly payment according to his loan agreement. The letter also includes the FDCPA Mini Miranda warning that the letter is from a debt collector and is an attempt to collect a debt.

30.     A redacted copy of this April 1, 2016 loss mitigation letter is attached hereto as Exhibit "E."

31.     On or about April 1, 2016, Shellpoint sent Plaintiff a second letter representing that they have received Plaintiff's request for loss mitigation program. It also informs Plaintiff as follows: "The evaluation process will begin once we have received all required documentation" and "[t]o proceed with your request for modification, you must submit the documents marked with an "X" to Shellpoint," which include documents containing Plaintiff's personal and financial information. Further, the letter came complete with a package of the documents necessary for Plaintiff to submit to Defendant in order to begin the loss mitigation process, and it urges Plaintiff to continue making his monthly payment according to his loan agreement. The letter also includes the FDCPA Mini Miranda warning that the letter is from a debt collector and is an attempt to collect a debt.

32.     A redacted copy of this April 1, 2016 loss mitigation letter Defendant sent to Plaintiff is attached hereto as Exhibit "F."

33.     On or about May 9, 2016, Defendant sent Plaintiff a letter representing that it had received Plaintiff's request for a loss mitigation program. It informs Plaintiff "[w]e are unable to offer you a loss mitigation option because you did not provide us with the documents we requested." It also asks Plaintiff to contact Defendant once the loan has been reinstated if he experiences further financial hardships for reconsideration.

34.     A redacted copy of this May 9, 2016 letter is attached hereto as Exhibit "G."

35.     On or about May 10, 2016, Defendant sent Plaintiff a "**MORTGAGE STATEMENT**," complete with payment coupon and return envelope, stating "Next Due Date 05/10/2016 and Amount Due $145,241.67" and "[i]f payment is received after 05/25/2016, $53.84 late fee may be assessed." In the Statement, the "Explanation of Amount Due" Section also specifically demands a "**Total Amount Due $145,241.67**," comprised of an "Overdue Payment $145,241.67" and a "Regular Monthly Payment $1,395.08." The Statement also contains a **Delinquency Notice" informing Plaintiff his is "late" on his "mortgage payments" and that "failure to bring your loan current may result in fees and foreclosure" and that "[a]s of 04/23/2016, you are 2,448 days delinquent on your mortgage loan." Additionally, the Statement threatens that "a negative credit report reflecting on your credit report may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations."

36.     A redacted copy of the May 10, 2016 Statement Defendant sent to Plaintiff has been attached hereto as Exhibit "H."

37.     On or about June 02, 2016, Defendant sent Plaintiff a "**MORTGAGE STATEMENT**," complete with payment coupon and return envelope, stating "Next Due Date 06/10/2016 and Amount Due $146,759.43" and "[i]f payment is received after 06/25/2016,

$53.84 late fee may be assessed." In the Statement, the "Explanation of Amount Due" Section also specifically demands a **Total Amount Due $146,241.67**," comprised of an "Overdue Payment $145,310.51" and a "Regular Monthly Payment $1,395.08." The Statement also contains a **Delinquency Notice" informing Plaintiff his is "late" on his "mortgage payments" and that "failure to bring your loan current may result in fees and foreclosure" and that "[a]s of 06/02/2016, you are 2,488 days delinquent on your mortgage loan." Additionally, the Statement threatens that "a negative credit report reflecting on your credit report may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations."

38.     A redacted copy of this June 2, 2016 Statement Defendant sent to Plaintiff has been attached hereto as Exhibit "I."

39.     On or about July 11, 2016, Defendant, through its attorneys Mackie Wolf Zientz & Mann, P.C., sent Plaintiff a "NOTICE OF ACCELERATION OF LOAN MATURITY" stating "the total balance due as of the date of this notice is $172,325.51" and that "[p]ayment must be made by cashier's check, certified check or money orders." Further, the notice states "[a]ll unpaid principal and accrued interest on the Note are due and payable at this time."   Also, the notice states that if Plaintiff does not dispute the "validity of the debt, or any portion thereof, within thirty days (30) after receipt of this notice," it "will be assumed valid by the firm."   The notice also states "THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE DEBT AND ANY INFORMATION OBTAINED BY IT WILL BE USED FOR THAT PURPOSE."

40.     A redacted copy of the July 11, 2016 notice is attached hereto as Exhibit "J."

41.     On or about August 28, 2016, Defendant sent Plaintiff a "**MORTGAGE STATEMENT**," complete with payment coupon and return envelope, stating "Next Due Date 09/10/2016 and Amount Due $151,151.19" and "[i]f payment is received after 09/25/2016, $53.84 late fee may be assessed." In the Statement, the "Explanation of Amount Due" Section also specifically demands a "**Total Amount Due $151,151.19**," comprised of an "Overdue Payment $149,702.27" and a "Regular Monthly Payment $1,395.08." The Statement also contains a **Delinquency Notice" informing Plaintiff his is "late" on his "mortgage payments" and that "failure to bring your loan current may result in fees and foreclosure" and that "[a]s of 08/28/2016, you are 2,575 days delinquent on your mortgage loan." Additionally, the Statement threatens that "a negative credit report reflecting on your credit report may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations."

42.     A redacted copy of this August 28, 2016 Statement has been attached hereto as Exhibit "K."

## V. GROUNDS FOR RELIEF – COUNT I

### TEXAS FINANCE CODE – TEXAS DEBT COLLECTION ACT (TDCA)

43.     Plaintiff repeats, re-alleges, and incorporates by reference all of the above paragraphs referenced above as if fully rewritten here.

44.     Defendant has violated the Texas Finance Code in numerous ways including, but not limited to, the following:

a)      Tex. Fin. Code § 392.301(a)(8), which prohibits Defendant from taking an action prohibited by law, since Defendant's attempts to collect the discharged debt constituted a violation of the bankruptcy discharge injunction currently in place and a

10

violation of Plaintiff's privacy rights, such actions also constituted a violation of the Texas Finance Code;

b)   Tex. Fin. Code § 392.304(a)(8), which prohibits Defendant from misrepresenting the character, extent, or amount of the subject debt, or misrepresenting the status of the debt in a judicial or governmental proceeding, since continuing to send statements and notices to Plaintiff showing a past-due balance due representing that such debt was collectible and enclosing a remittance coupon and return envelope and making collection calls to Plaintiff, as if he was liable to pay the discharged debt, Defendant was misrepresenting that the debt on the Account was collectible when it was not by virtue of the discharge injunction; and;

c)   Tex. Fin. Code § 392.304(a)(19), which prohibits Defendant's use of false representations or deceptive means to collect a debt, for the same reasons as stated in the preceding paragraph, Defendant used false representations that the discharged debt was still owed by Plaintiff and/or deceptive means to collect a debt, since the debt on the Account was discharged and uncollectible.

45.   Under Tex. Fin. Code Ann. § 392.403, the said violations render Defendant liable to Plaintiff for actual damages, statutory damages, for injunctive relief, costs, and reasonable attorney's fees. Plaintiff's injuries resulted from Defendant's gross negligence, malice, and/or actual fraud, which entitles Plaintiff to punitive damages.

46.   Due to Defendant's conduct, Plaintiff was forced to hire counsel and his damages include reasonable attorney's fees incurred in prosecuting this claim.

**VI. GROUNDS FOR RELIEF - COUNT II**

### FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

47.    Plaintiff alleges and incorporates herein all of the above paragraphs as if set forth in their entirety. Plaintiffs assert claims against Shellpoint only under the FDCPA.

48.    The Fair Debt Collection Practices Act ("FDCPA") is a comprehensive statute which prohibits a catalog of activities in connection with the collection of debts by third parties. *See* 15 U.S.C. § 1692 *et seq*. The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. *See* 15 U.S.C. §1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

49.    In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action. The substantive heart of the FDCPA lies in three broad prohibitions. First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. §1692d. Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. Third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §1692f. The FDCPA is designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, broadly prohibits unfair or unconscionable collection methods, conduct which

12

harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt.

50.    In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692a. Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers. *See* 15 U.S.C. §1692b.

51.    Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors. The express purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to ensure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. §1692e.

52.    The FDCPA is a strict liability statute, which provides for actual and statutory damages upon the showing of a single violation. *See Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62-3, (2d Cir. 1993); *see also Taylor v. Perrin, Landry, DeLaunay & Durand*, 103 F.3d 1232 (5th Cir. 1997). "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996); *see also Gearing v. Check Brokerage Corp.*, 233 F.3d 469 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status violated FDCPA); *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993).

53.     The FDCPA is a remedial statute and therefore must be construed liberally in favor of the debtor. *Sprinkle v. SB&C Ltd.*, 472 F. Supp. 1235 (W.D. Wash. 2006). The remedial nature of the FDCPA requires that courts interpret it liberally. *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C. §1601 *et seq.*, is a remedial statute, it should be construed liberally in favor of the consumer." *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002).

54.     The FDCPA is to be interpreted in accordance with the "least sophisticated consumer" standard. *See Brown v. Card Serv. Ctr*, 464 F.3d 450, 453 fn1 (3d Cir. 2006); *Graziano v. Harrison*, 950 F.2d 107, 111, fn5 (3rd Cir. 1991). The FDCPA was not "made for the protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking, and the credulous, and the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." *Id*. The least sophisticated consumer standard serves a dual purpose in that it ensures protection of all consumers, even naïve and trusting, against deceptive collection practices, and protects collectors against liability for bizarre or idiosyncratic interpretations of collection notices. *See Clomon*, 988 F.2d at 1318.

55.     To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading representations or means in connection with the collection of any debt and sets forth a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. *See* 15 U.S.C. § 1692 e(1) - (16).

56.     Upon information and belief, all of Defendant's actions at issue described hereinabove are the manifestation of its practices and policies to ignore the provisions of the

Bankruptcy Code applicable to it and illegally collect or attempt to collect pre-petition debts from unsophisticated debtors, like Plaintiff.

## VII. GROUNDS FOR RELIEF – COUNT III

### INVASION OF PRIVACY

57.     Plaintiff repeats, re-alleges, and incorporates by reference the above paragraphs Nos. 9-42, as if fully rewritten here in their entirety.

58.     Defendant's conduct, as described hereinabove, when it made harassing and illegal contacts with Plaintiff through its written demands for payment or actions to coerce payment of the discharged debt and collection calls, constituted invasions of Plaintiff's private affairs. These invasions were ones that would be highly offensive to a reasonable person because Defendant was forbidden by law to contact Plaintiff post-discharge regarding the subject debt and Plaintiff had a reasonable basis to believe he would have such privacy and not his privacy rights would not be invaded by Defendant's collection attempts and harassment. Such wrongful acts caused injury to Plaintiff which resulted in his emotional anguish, loss of time and inconvenience.

59.     Plaintiff's injuries resulted from Defendant's malice which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

## VIII. GROUNDS FOR RELIEF – COUNT IV

### VIOLATION OF THE BANKRUPTCY DISCHARGE INJUNCTION

60.     Plaintiff repeats, re-alleges, and incorporates herein all previous paragraphs above as if set forth herein in their entirety.

15

61.    At all times material to this proceeding, Defendant had actual knowledge about Plaintiff's Bankruptcy Case and the discharge of the debt at issue.

62.    Defendant, post-discharge, attempted to collect on the subject discharged debt from Plaintiff.

63.    Defendant failed to not engage in debt collection activity on the debt at issue when it became aware Plaintiff filed for bankruptcy protection and the subject debt had been discharged in Plaintiff's Bankruptcy Case.

64.    Defendant's aforesaid actions were willful acts and constitute efforts to collect the discharged debt from Plaintiff in violation the discharge injunction of 11 U.S.C. §524(a). Defendant's failure to comply with the aforesaid laws, in light of being on notice of Plaintiff's Bankruptcy Case and discharge and the effect of the discharge, illustrates its contempt for federal law and the discharge injunction.

65.    The actions of Defendant at issue constitute a gross violation of the discharge injunction as set forth in 11 U.S.C. §524(a)(1)-(3).

66.    The facts and background stated above demonstrate that Defendant willfully violated the orders and injunctions of the Bankruptcy Court as they concern the Chapter 7 bankruptcy filed by Plaintiff. With this prima facie showing, the duty is on Defendant to show, as its only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court that goes beyond a mere assertion of inability. Failing a showing of a present inability to comply with the orders and injunctions of the Bankruptcy Court by Defendant, Plaintiff must prevail on his claims, and Defendant must be held liable for willfully violating the orders and injunctions of the Bankruptcy Court with regard to the bankruptcy filed by Plaintiff.

Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant. Any allegation of a good faith exception should not be allowed.

67.     Specifically, Defendant violated the part of the Bankruptcy Court's Discharge Order pertaining to 11 U.S.C. §524(a)(2) which "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived;…'"

68.     No exceptions exist under 11 U.S.C. §524 or the other provisions of the United States Bankruptcy Code or other applicable law that permit the conduct of Defendant at issue with regard to the discharge injunction, as stated above.

69.     The orders and injunctions of the Bankruptcy Court cannot be waived, except by the virtue of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint. None of the aforementioned has been approved by the Court here, and no waiver of the orders or injunctions of the Court has occurred in Plaintiff's Bankruptcy Case as pertaining to the rights and remedies of Defendant.

70.     Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to violations of the orders and injunctions of the Bankruptcy Court. Any attempt to burden Plaintiff with policing the misconduct of Defendant would be a complete derogation of the law. It is well settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for shouldering the cost of compliance. Any such defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy

17

Court in this proceeding, which is prohibited. Any defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and actions of Defendant. No allegation of a mitigation as a defense should be allowed.

71. Plaintiff has been injured and damaged by Defendant's actions at issue and is entitled to recover judgment against Defendant for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for violations of 11 U.S.C. §524 and pursuant to the Court's powers under 11 U.S.C. § 105.

## IX. DAMAGES

72. In addition to any damages previously stated hereinabove, the conduct of Defendant at issue has proximately caused Plaintiff past and future monetary loss with regard to actions he had to take investigating his claims at bar and expenses incurred related thereto and related to bringing this lawsuit, as well as causing him mental distress, emotional anguish and a discernable injury to Plaintiff's emotional state and other damages, evidence for which will be presented to the jury.

73. After a reasonable time to conduct discovery in this case, Plaintiff believes he will be able to show that all actions at issue were taken by employees, agents, servants, or representatives of any type for Defendant in the line and scope of such individuals' (or entities') employment, agency, or representation.

74. After a reasonable time to conduct discovery, Plaintiff believes he will be able to show that all actions taken by Defendant at issue were conducted maliciously, wantonly, recklessly, intentionally, knowingly, and/or willfully, and with either the desire to harm Plaintiff

and/or with the knowledge that its actions would very likely harm Plaintiff and/or that its actions were taken in violation of the law.

75.     At all relevant times, Defendant knew, and continues to know, that a debt included in bankruptcy or discharged in bankruptcy, means the debt is not legally collectible, but Defendant has made a corporate decision to willfully and maliciously act contrary to its knowledge in its calculated decision to violate Plaintiff's legal rights.

76.     After a reasonable time for discovery, Plaintiff believes he will be able to show that despite Defendant receiving dozens, if not hundreds, of disputes complaining about the types of actions at issue, Defendant intentionally and knowingly has not corrected its policies of engaging in these actions.

77.     After a reasonable time for discovery, Plaintiff believes he will be able to show that Defendant has engaged in a pattern and practice of wrongful and unlawful behavior, in accordance with its policies and procedures, with respect to willfully, intentionally, and maliciously attempting to collect on debts included in and discharged in bankruptcy. Accordingly, Defendant is subject to punitive damages, statutory damages, and all other appropriate measures to punish and deter similar future conduct by Defendant and similar companies. Moreover, Plaintiff's injuries resulted from Defendant's malice and/or actual fraud, which entitle Plaintiff to punitive damages.

78.     Due to Defendant's conduct, Plaintiff was forced to hire counsel and his damages include reasonable attorney's fees incurred in prosecuting his claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Jerome M. Holmes, prays the Court will:

A.    Enter judgment in favor of Plaintiff and against Defendant for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees for violations of the TDCA, FDCPA, Plaintiff's privacy rights and the discharge injunction;

B.    Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.    Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

D.    Grant such other and further relief, in law or equity, to which Plaintiff might show he is justly entitled.


Respectfully submitted,


/s/ Marilyn S. Altamira
James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com
Marilyn S. Altamira
State Bar Number 00796119
maltamira@mancheelawfirm.com
MANCHEE & MANCHEE, PC
2745 North Dallas Parkway, Suite 420
Plano, Texas 75093
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

COUNSEL FOR PLAINTIFF

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

November 1, 2016 _____ /s/ Marilyn S. Altamira _____
Date Marilyn S. Altamira